ORIGINAL

FILED
JUL 29 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURTOF FEDERAL CLAIMS**

| | |
|---|---|
| NEIL CHRISTIAN WILHELMUS<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | Case No. 08-544 C |

**COMPLAINT**

1) This complaint involves review by the Court of a decision of the Army Board for the Correction of Military Records in which the board denied Plaintiff's request to correct his military records to show that he does not owe Defendant a debt of $137,630.00. The Government has recovered approximately $6,000.00 through the garnishment of Plaintiff's wages and federal income tax. The alleged debt is the result of Plaintiff's involuntary disenrollment from the United States Military Academy, West Point, New York, and the non-completion of his contractual period of obligated service in the U.S. Army.

## I. JURISDICTION

2) This Court has jurisdiction under 28 U.S.C. § 1346(a)(2), the "Little Tucker Act." Plaintiff raises claims arising under federal statutes and military regulations.

3) The federal statutes upon which jurisdiction rests are the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. (2000), which authorizes this Court to review decisions of the Army

Board for the Correction of Military Records, and 10 U.S.C. § 2005 (2005), which governed the recoupment of Plaintiff's educational expenses.

## II. THE PARTIES

4) Plaintiff was a Cadet at the United States Military Academy ("USMA") and a member of the U.S. Army. Plaintiff was adversely affected by a decision of the Army Board for the Correction of Military Records ("ABCMR").

5) Defendant is the United States of America.

## III. STATUTE OF LIMITATIONS AND EXHAUSTION OF ADMINISTRATIVE REMEDIES

6) Plaintiff was discharged from the Army effective April 28, 2003.

7) On July 26, 2007, the ABCMR entered a final decision denying Plaintiff's application to correct his military records to show that he is not indebted to Defendant.

8) Plaintiff has exhausted his administrative remedies.

9) 28 U.S.C § 2501 requires the filing of a claim in this Court within six (6) years after such claim first accrues.

10) Plaintiff's claim accrued on April 28, 2003, when he was discharged from the Army.

11) Plaintiff's complaint is timely filed.

## IV. STATEMENT OF FACTS

12) On June 30, 1997, Plaintiff signed the oath of allegiance and cadet contract with the USMA. The parties executed the agreement in the State of New York.

13) From the beginning his of cadet career, Plaintiff experienced difficulties passing the Cadet Physical Fitness Test ("CPFT").

14) Plaintiff suffered injuries and medical conditions while a cadet that negatively affected his ability to meet the USMA physical fitness standards. His difficulties also were due in part to the fact that he is not naturally athletic.

15) By memorandum dated December 21, 1998, during the first semester of Plaintiff's second academic year, Colonel Maureen K. LeBouef provided the Commander of Cadets with the names of the individuals who had experienced "Repeated Physical Fitness Test Failures." The list included Plaintiff's name.

16) During his second academic year, Plaintiff failed the CPFT three times. Because of his CPFT failures, on April 26, 1999 the Army cancelled his scheduled attendance at Airborne School.

17) The Army advised Plaintiff that he would be recommended for separation if he did not pass the 90-day CPFT retest. Plaintiff established a remedial training program with the assistance of another cadet.

18) By memorandum dated June 19, 1999, Plaintiff informed his command of the reasons for his failure of three consecutive CPFTs.

19) Plaintiff failed the 90-day retest, and on June 24, 1999 the Army initiated separation paperwork.

20) Plaintiff noted the fact that before both the 60 and 90 day retests, he had injured his knee and had been placed on a no-running profile. Plaintiff stated that because of his injury he was unable to run for several weeks, which significantly impaired his performance on the retests.

21) The Army was aware of Plaintiff's documented injuries and the fact that he had been placed on a no-running profile.

22) On August 20, 1999, Plaintiff passed the Fall, 1999 CPFT.

23) On April 23, 2000 the Academy provided Plaintiff a Cadet Excusal due to a knee injury.

24) Plaintiff failed the Spring, 2000 CPFT, held on May 5, 2000.

25) Plaintiff was unable to take retests scheduled for May 24, 2000, August 18, 2000, and September 13, 2000 because of an ingrown large toenail. Proper medical authority documented his condition and excused him from taking the retests.

26) On October 27, 2000, Plaintiff took and failed the CPFT retest, which was scheduled 175 days after his initial failure on May 5, 2000.

27) Four days later, on October 31, 2000, the Army initiated disenrollment proceedings against Plaintiff.

28) On January 18, 2001 Plaintiff was given a medical excusal due to low back pain.

29) On March 27, 2001, the Army placed Plaintiff on a temporary physical profile due to a herniated disc at the L5-S1 level. The profile was set to expire on April 26, 2001.

30) Plaintiff was not afforded any other opportunity to take the CPFT.

31) Plaintiff involuntarily departed the Academy in April, 2001, approximately one month before his expected graduation.

32) By memorandum dated July 18, 2002, Plaintiff's orders were amended to show that he was placed on administrative leave without pay.

33) By memorandum dated April 28, 2003, Plaintiff's separation from the Army was approved and effected.

34) Plaintiff enjoyed consistently good performance in all other aspects of the USMA program. He consistently performed in the upper half of those cadets ranked center-of-mass. He received numerous accolades for his effectiveness as a leader and a follower.

35) Plaintiff's general performance, academically and militarily, was not a cause for concern to USMA leaders.

36) Plaintiff was never counseled on record for academic or military performance deficiencies other than his difficulties meeting the USMA physical fitness standards.

37) After Plaintiff involuntarily departed the USMA, Major Christine L. Harvey conducted an investigation pursuant to Army Regulation 15-6 and 10 U.S.C. § 2005 and determined that Mr. Wilhelmus failed to fulfill his contractual obligation to the Army and therefore owed the government $137, 630.00.

38) Defendant directed the recoupment of Plaintiff's education expenses, undertaken through the Defense Finance and Accounting Service and the Department of the Treasury.

39) Plaintiff's wages presently are being garnished. He has paid approximately $6000.00 through wage and federal income tax garnishment.

**Application to ABCMR**

40) On September 26, 2006, Plaintiff applied to the ABCMR. He requested that the Board correct his records to show that he did not owe a lawful debt to the U.S. Government.

41) In his application, Plaintiff argued that he did not voluntarily or because of misconduct fail to fulfill his active duty service obligation.

42) Plaintiff argued that he was unlawfully separated for medical conditions rather than failure to comply with USMA physical fitness standards.

43) Plaintiff further argued that it was unjust for the Army to have disenrolled him only one month prior to his expected graduation.

44) In support of his argument that his disenrollment was unjust, Plaintiff referred the ABCMR to its previous decision, ABCMR Docket Number AR2003094057, Board Date August

4, 2004, in which it ruled, on highly similar facts, that it was a "grave injustice" to have disenrolled the applicant so close to his expected graduation, after he had incurred a repayment obligation, and where the applicant had experienced difficulty passing the CPFT since the beginning of his service as a Cadet.

45) On May 9, 2007, the Army provided Plaintiff an Advisory Opinion, also submitted to the ABCMR, which recommended that Plaintiff's application be denied. Plaintiff submitted a rebuttal to the Advisory Opinion.

46) On July 26, 2007, the ABCMR considered the merits of Plaintiff's application and denied the requested relief.

## V. LEGAL CLAIMS

### 1. THE ABCMR FAILED TO APPLY THE DOCTRINE OF PRECEDENT AS REQUIRED BY THE LAW OF THIS CIRCUIT.

47) Paragraphs 1-46 are incorporated herein by reference.

48) The doctrine of precedent applies to the ABCMR.

49) "An agency is obligated to follow precedent, and if it chooses to change, it must explain why." British Steel PLC v. United States, 127 F.3d 1471, 1475 (Fed. Cir. 1997), citing M.M & P. Maritime Advancement, Training, Educ. & Safety Program v. Dept of Commerce, 729 F.2d 748, 755 (Fed. Cir. 1984).

50) "It is axiomatic that 'an agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so.'" Kreis v. Sec. of the Air Force, 406 F.3d 684, 687 (D.C. Cir. 2005), quoting Indep. Petroleum Ass'n of Am. v. Babbitt, 92 F.3d 1248, 1258 (D.C. Cir. 1996).

51) The doctrine of precedent helps to ensure reasoned decision-making by the ABCMR and to prevent arbitrary and capricious decisions generally by government authorities such as the ABCMR.

52) In ABCMR Docket Number AR2003094057, Board Date August 4, 2004, the ABCMR ruled that the applicant, also a former USMA cadet, did not owe a lawful debt to the Army where he experienced continuous difficulties meeting the CPFT. The law applicable in that case is the same applicable to Plaintiff's case.

53) According to the Board, "[t]he majority felt that, as the applicant had had problems passing the CPFT and CPFT from the beginning, the Army should have separated him before he became subject to recoupment. Seeking recoupment after the applicant had been permitted to successfully complete four years of academic courses before being separated for failing the Academy's physical training requirements, which resulted in denial of graduation and commissioning, constituted a grave injustice."

54) AR2003094057 shares highly similar facts and circumstances with the instant case. In both cases the cadets from the beginning had difficulties passing the CPFT. Both underwent repeated counseling for their CPFT failures. Both engaged in special training programs to improve their CPFT performance. Both had medical conditions that impaired their ability to pass the CPFT. Both applicants strove diligently to improve their CPFT performances and did in fact improve their performances. Both failed the CPFT by narrow margins. Both were disenrolled in their final semester after completing nearly all academic requirements at the Academy. Both cadets performed satisfactorily in their academic studies and tactical military activities.

55) Plaintiff's situation also differs somewhat from that of AR2003094057. The applicant in AR2003094057 suffered an injury to his neck, the only injury the applicant apparently sustained.

56) Plaintiff, in contrast, suffered injuries and conditions throughout nearly his entire time at the Academy. He sustained injuries to his knee and lower-back, and was excused from three CPFT record tests because of an ingrown toenail. The physical limitations affecting his ability to satisfactorily perform the CPFT therefore were greater than those affecting the applicant in AR2003094057.

57) In his application to the ABCMR, Plaintiff argued that the ABCMR is bound to follow its previous decisions. He argued that AR2003094057 compelled the board to grant relief in his case.

58) In its decision memorandum, the ABCMR addressed this argument, stating, "[t]he applicant's counsel contends that the ABCMR has granted relief in a similar case. The ABCMR reviews each case individually and is presented before the Board based on its own merit and evidence presented. There are no cases that set the standards on how the Board should always vote."

59) The ABCMR also noted that "[t]he decision in ABCMR Docket Number AR2003094057 also was not a unanimous decision to grant relief." The ABCMR provided no other explanation for why it should not follow that decision.

60) The ABCMR failed to provide a legitimate reason for not adhering to its reasoning and decision in AR2003094057 and for denying Plaintiff the relief he requested. Each of the ABCMR's arguments for granting relief to the applicant in AR2003094057 was equally

applicable to Plaintiff, including the argument that Plaintiff would have been unjustly enriched had Defendant not sought recoupment.

61) The ABCMR cannot disregard its previous decisions when deciding factually similar cases, as it did here.

62) Because the ABCMR disregarded its previous decision in deciding Plaintiff's case and expressly rejected the doctrine of precedent altogether, its decision was arbitrary, capricious, unsupported by substantial evidence, contrary to law, and not in conformity with mandatory procedures.

**2. IT WAS ERROR AND INJUSTICE TO NOT DISENROLL PLAINTIFF AFTER HE REPEATEDLY FAILED THE CPFT DURING HIS FIRST TWO YEARS.**

63) Paragraphs 1 through 46 are incorporated herein by reference.

64) Plaintiff argued to the ABCMR that it was error and injustice for the Army not to have disenrolled him after he completed his second year of training, when it was apparent that he was not meeting physical fitness standards.

65) The record evidence shows that as early as December 21, 1998, during his second year, Plaintiff experienced "Repeated Physical Fitness Test Failures" for tests held in October and November 1997.

66) During his second year, Plaintiff failed the CPFT three times.

67) On April 26, 1999, the Army notified Plaintiff that it had cancelled his scheduled attendance at the U.S. Army Airborne School due to his CPFT failures.

68) The Army initiated disenrollment proceedings against Plaintiff on June 24, 1999.

69) During his first two years Plaintiff never passed the CPFT.

70) Plaintiff argued before the ABCMR that it was error and injustice for the USMA not to have disenrolled him after his second year, before he would have been subject to recoupment

or involuntary active duty, and when it was apparent that he did not meet the physical fitness standards.

71) Plaintiff argued that the reasoning of the ABCMR in AR2003094057, discussed above, applied equally to his circumstances. In that decision, the ABCMR ruled, "[t]he majority felt that, as the applicant had had problems passing the CPFT from the beginning, the Army should have separated him before he became subject to recoupment. Seeking recoupment after the applicant had been permitted to successfully complete four years of academic courses before being separated for failing the Academy's physical training requirements, which resulted in denial of graduation and commissioning, constituted a grave injustice." See Paragraph 1, "Discussion and Conclusions."

72) The ABCMR rejected Plaintiff's argument, stating, "[t]he Army invests much time and money in ensuring as many cadets as possible graduate and fulfill their obligation to the Army. It appears that the Academy was giving the applicant every benefit of the doubt by allowing him to continue with the course or else he would have agreed that he should be separated prior to the start of his third year." Paragraph 9, "Discussion and Conclusions."

73) The ABCMR's reasoning in rejecting Plaintiff's argument was premised on speculation, not fact. There is no evidence in the record that the USMA permitted Plaintiff an informed choice about continuing his service with full disclosure of the attendant risks of doing so, or that the USMA was giving Plaintiff the benefit of the doubt. There is no explanation in the record evidence of why Plaintiff was not disenrolled after his second academic year.

74) Even if such evidence existed, it would not alter the conclusion that the USMA's failure to disenroll Plaintiff prior to or after the conclusion of his second year, when he had not

passed a single CPFT, and when it was readily apparent that he was unlikely to meet the physical fitness standards, was error and injustice permitting the ABCMR to grant relief.

75) The ABCMR previously ruled under highly similar circumstances that it was grave injustice to allow recoupment by the Army. See AR2003094057, supra.

76) The ABCMR's rejection of Plaintiff's argument that it was error and injustice not to have disenrolled him before or after completion of his second year, when he became subject to recoupment, therefore was arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

### 3. THE ABCMR UNLAWFULLY CONCLUDED THAT PLAINTIFF WAS NOT SEPARATED DUE TO INJURIES AND MEDICAL CONDITIONS.

77) Paragraphs 1 through 46 are incorporated herein by reference.

78) Plaintiff argued before the ABCMR that his disenrollment from the USMA was due to medical conditions and injuries, and a naturally occurring lack of athleticism, rather than voluntary conduct or misconduct.

79) Plaintiff presented evidence that he had been plagued by physical injuries and medical conditions that impaired his ability to successfully complete the CPFT.

80) Plaintiff presented evidence that he was injured prior to taking a 60-day CPFT (retest) on February 11, 1999 and a 90-day CPFT (retest) on May 27, 1999.

81) Plaintiff presented evidence that on April 3, 2000, he was diagnosed with a left-knee sprain for which physical therapy was prescribed, and for which he received a limited duty medical excusal from April 3, 2000 through April 20, 2000.

82) On May 5, 2000, Plaintiff failed a CPFT. He was informed that he would be retested on May 24, 2000.

83) Plaintiff was diagnosed and treated for an ingrown large toenail, and based on that condition he was excused from taking three CPFT retests over a 14-week period, scheduled for May 24, 2000, August 18, 2000, and September 13, 2000.

84) On October 27, 2000, Plaintiff took the CPFT and passed the sit-up portion, but failed the pushup and 2-mile run portions.

85) The USMA commenced separation action against Plaintiff on October 31, 2000. The USMA allowed Plaintiff to continue to serve an additional five months, until April, 2001.

86) On January 18, 2001, Plaintiff was given a medical excusal due to low back pain.

87) On March 27, 2001, Plaintiff was placed on a temporary medical profile with a diagnosis of a herniated disc.

88) In April, 2001, Plaintiff involuntarily departed the USMA.

89) In response to Plaintiff's arguments that he was separated for medical conditions and injuries rather than voluntary conduct or misconduct, the ABCMR stated, "[t]here is evidence of record to show the applicant had problems with the APFT from nearly the outset of his cadet career; however, the first available evidence of record to show he had medically-diagnosed problems that could have interfered with his passing the APFT is dated 22 February 2000."

90) The ABCMR further stated, "[i]t is noted that, in his 19 June 1999 memorandum to the BTO he mentioned he had been injured prior to the 60-day and 90-day retests; however, medical documentation from those incidents is not available for the Board to consider and presumably they only rendered him temporarily unable to perform the APFT."

91) Continuing, the ABCMR noted, "[t]here is no evidence of record to show the applicant was on other than a temporary profile (on 18 January 2001 and due to expire on 4 February 2001 and 27 March 2001 and due to expire on 26 April 2001) or that he had any other

medical condition that rendered him physically unfit to perform his military duties except for certain events on the APFT. Although the applicant had been diagnosed with a herniated disc, he was diagnosed with the condition several years after his difficulty with passing the APFT began and after separation proceedings were initiated."

92) The ABCMR then concluded, "[n]one of the failed APFTs were due to his back condition. Apparently, applicant's failures to meet push-up standards were not affected by the profiles he was issued. Therefore, counsel's contention that the Army separated the applicant due to the injuries and conditions he suffered, rather than because he "voluntarily" (under the Department of Defense interpretation of "voluntary" as upheld by the court) failed to meet the Army physical fitness standards, is not supported by the evidence."

93) The ABCMR's reasoning conspicuously excluded any discussion of Plaintiff's medical excusal based on a knee injury of April 3, 2000, which ran through April 20, 2000, and the fact that he failed the CPFT on May 5, 2000.

94) The ABCMR's reasoning also excluded discussion of Plaintiff's medical excusals from taking CPFT retests on May 24, 2000, August 18, 2000, and September 13, 2000, due to a painful ingrown large toenail.

95) The ABCMR focused on the referenced temporary profiles without proper consideration and analysis of Plaintiff's other documented medical conditions and injuries which demonstrably impeded his ability to achieve USMA physical fitness standards and pass the CPFT.

96) Plaintiff presented clear and convincing evidence that his inability to pass the CPFT was due to medical injuries and conditions he suffered, and that were beyond his control.

97) Plaintiff could not be subjected to recoupment of educational expenses if medically diagnosed problems interfered with his maintaining physical fitness and meeting prescribed physical fitness standards. Favreau v. United States, 49 Fed. Cl. 635 (2001). See also United States v. Gears, 835 F. Supp. 1093 (N.D. IN. 1993).

98) Plaintiff could not be subjected to recoupment of educational costs if his failure to complete the obligated period of active duty service was not due to voluntary conduct or misconduct. 10 U.S.C. § 2005 (2005).

99) The ABCMR's rejection of Plaintiff's claim that he does not owe the Government a debt because he was disenrolled for medical conditions and injuries that interfered with his maintaining physical fitness and meeting prescribed physical fitness standards was arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

**4. THE ABCMR UNLAWFULLY CONCLUDED THAT PLAINTIFF'S SEPARATION WAS THE RESULT OF VOLUNTARY CONDUCT.**

100) Paragraphs 1 through 46 are incorporated herein by reference.

101) Plaintiff presented clear and compelling evidence that his inability to meet USMA physical fitness standards was not due to voluntary conduct or misconduct.

102) Plaintiff presented evidence that he was injured prior to taking a 60-day CPFT (retest) on February 11, 1999 and a 90-day CPFT (retest) on May 27, 1999.

103) Plaintiff presented evidence that on April 3, 2000, he was diagnosed with a left-knee sprain for which physical therapy was prescribed, and for which he received a limited duty medical excusal from April 3, 2000 through April 20, 2000.

104) On May 5, 2000, Plaintiff failed a CPFT. He was informed that he would be retested on May 24, 2000.

105) Plaintiff was diagnosed and treated for an ingrown large toenail, and based on that condition he was excused from taking three CPFT retests, scheduled for May 24, 2000, August 18, 2000, and September 13, 2000.

106) On October 27, 2000, Plaintiff took the CPFT and passed the sit-up portion, but failed the pushup and 2-mile run portions.

107) The USMA commenced separation action against Plaintiff on October 31, 2000.

108) On January 18, 2001, Plaintiff was given a medical excusal due to low back pain.

109) On March 27, 2001, Plaintiff was placed on a temporary medical profile with a diagnosis of a herniated disc.

110) In April, 2001, Plaintiff involuntarily departed the USMA.

111) Plaintiff presented evidence that he received consistently acceptable Cadet Performance Evaluations.

112) Plaintiff presented evidence that he diligently pursued remedial physical fitness training as coordinated by another cadet and independently undertaken.

113) Plaintiff presented evidence that his academic and tactical military performances were never considered deficient or problematic.

114) Plaintiff was never formally counseled for any reason apart from his physical fitness test performance.

115) The ABCMR appears to have relied solely on two considerations in finding that Plaintiff's inability to complete his required period of obligated service was due to voluntary conduct: (a) "…applicant's failures to meet push-up standards were not affected by the profiles he was issued;" and (b) "[t]he applicant … was informed as early as January 1999 that failure to pass the APFT would result in his separation."

116) The ABCMR's assertion that Plaintiff's "failures to meet push-up standards were not affected by the profiles he was issued" was an irrelevant consideration, or was given undue weight, because failure of any one of the three components of the CPFT constituted an overall failure of the CPFT.

117) The ABCMR's assertion that Plaintiff "was informed as early as January 1999 that failure to pass the APFT would result in his separation" was an irrelevant consideration, or was given undue weight, because the USMA made the decision to retain Plaintiff after he repeatedly failed the CPFT.

118) The ABCMR had no factual basis for concluding that Plaintiff's CPFT failures were due to voluntary conduct or misconduct.

119) The ABCMR's rejection of Plaintiff's claim that his inability to meet the USMA physical fitness standards was not due to voluntary conduct or misconduct was arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

**5. THE ARMY UNLAWFULLY INVOKED THE EQUITABLE DOCTRINE OF UNJUST ENRICHMENT TO DENY PLAINTIFF'S APPLICATION.**

120) Paragraphs 1 through 46 are incorporated herein by reference.

121) In rejecting Plaintiff's argument to the ABCMR that he does not owe a lawful debt to the U.S. Government, the Board invoked the equitable doctrine of unjust enrichment.

122) According to the ABCMR, "[t]o waive the debt without getting the benefits of the active duty obligation he would have owed had he graduated would be an unjust enrichment."

123) Under the law of the State of New York, where Plaintiff and Defendant made their agreement, the doctrine of unjust enrichment is inapplicable where the parties' obligations are governed by written agreement. See Goldman v. Metropolitan Life, 841 N.E.2d 742, 746

(2005). ("Here, in each case, there was no unjust enrichment because the matter is controlled by contract.") (Citations and quotations omitted.)

124) In this case, the parties' obligations were governed by the June 30, 1997 written agreement entered into by Plaintiff and Defendant.

125) The doctrine of unjust enrichment therefore was inapplicable and provided the ABCMR no legal or factual basis for denying Plaintiff's application.

126) Even if the doctrine were applicable, the ABCMR overlooked the fact that had the USMA disenrolled Plaintiff prior to commencing his third year, or even his fourth year, he could have attended a state institution of higher education, which he ultimately did, at a substantially lower cost than that assigned to his USMA education.

127) The ABCMR's invocation of an inapplicable doctrine of law to justify its denial of Plaintiff's application was arbitrary and capricious, unsupported by substantial evidence, and contrary to law.

**REQUEST FOR RELIEF**

Based on the foregoing, Plaintiff respectfully requests that the Court grant him the following relief:

(1) Declare Plaintiff's assigned debt of $137,630.00 to be unlawful, null, and void;

(2) Order Defendant to reimburse Plaintiff for money already exacted through wage and federal income tax garnishment, plus reasonable interest on those amounts;

(3) Order Defendant to take all actions necessary to correct Plaintiff's credit reports to show that no lawful debt was owed or is owed, and to remove all references from his credit histories to the debt;

(4) Order Defendant to pay all costs associated with this action;

(5) Award Plaintiff attorney's fees incurred as a result of this action; and

(6) Grant any other relief deemed by the Court to be necessary and appropriate.

Respectfully submitted,

Raymond J. Toney
The Law Office of Raymond J. Toney
404 Park Avenue South, 14th Floor
New York, NY 10016
Tel: 212-686-3434, ext. 206; Fax: 718-504-4735
E-mail: rjtoney@rjtlaw.net

*Counsel for Plaintiff*

July 26, 2008